WALTER L. WILSON, Appellee, v. MINNIE L. WILSON, Appellant; HAROLD CHAPMAN et al., Appellees; EQUITABLE LIFE INSURANCE COMPANY of Iowa, Intervenor, Appellee.

No. 43122.

DECEMBER 17, 1935.

Charles A. Reese, W. C. Ratcliff, and R. J. Swanson, and Henry Read, for appellant.

Stephens, Thornell & Millhone, and A. C. McGill and Carl M. Adams, for appellees.

ANDERSON, J.—This case, while in equity, presents purely a question of fact. The controversy is over rentals, consisting of a share of the crops and cash rentals. Minnie L. Wilson, the appellant, on September 1, 1931, was the owner of a 180-acre farm, the equity of which she had purchased subject to a first mortgage held by the Equitable Life Insurance Company of Iowa, intervenor and appellee, and also subject to a second mortgage held by her husband, Walter L. Wilson. The life insurance company foreclosed its mortgage, and a sale was had under such foreclosure on October 22, 1931. A sheriff's deed was issued to the purchaser, insurance company, on October 22, 1932. Walter L. Wilson foreclosed his second mortgage and obtained a decree on September 15, 1931. In this latter action an order was made appointing a receiver to take charge of the mortgaged property and rent the same during the period of redemption. The receiver so appointed never qualified, however, and did not lease the land during the period of redemption. The appellee Harold Chapman had been renting the farm from Mrs. Wilson for several years prior to 1932, under written leases. Walter L. Wilson claims that a day or two after he obtained the decree of foreclosure on his second mortgage, in December, 1931, he and his wife, Minnie L. Wilson, went to the farm and had a conversation with Mr. Chapman regarding the leasing of this farm for the crop season of 1932, beginning March 1, and ending October 22, 1932. Both Mr. and Mrs. Wilson testify that they told Mr. Chapman that they would rent the farm to him for the term ending October 22, 1932, for a rental of one-half of the corn raised on the farm, which was to be harvested and removed from said farm prior to October 22, 1932, and for an additional cash rental of $299, which was to be paid October 1, 1932. Mr. and Mrs. Chapman, the tenants, admitted that Walter

Wilson had made the above proposition to them as to renting the land, but testified that Mrs. Wilson did not accompany her husband on the visit to the farm and could know nothing about any pretended arrangement as to leasing. The Chapmans testified further that they told Wilson that they would not stay on the place under the proposed arrangements; that they would not agree to pick the corn and deliver it on or prior to October 22, and they would not agree to pay the cash rent on the first of October, 1932. No written lease was made or executed. The Chapmans were not disturbed in their possession and continued to occupy the farm until March 1, 1933. One P. M. Cadwell, who had been appointed receiver in the foreclosure suit of Walter L. Wilson, and who never qualified or acted as such, went to the farm in February, 1932, and claims that he endeavored to enter into a written lease with Mr. Chapman containing the same provisions as proposed by Mr. Wilson in December, 1931. Chapman refused to sign any such lease. The question naturally presents itself here that if the oral lease was made in December, 1931, as claimed by the appellant, Wilson, why the necessity, and what the excuse, of again attempting to make a lease in February, 1932, by and through a receiver who had never qualified and had no authority as such receiver to make such a lease. The making of the oral lease in December, 1931, as testified to by Wilson is denied absolutely by both Mr. and Mrs. Chapman. The burden to establish such a lease was upon Walter Wilson and the appellant, Minnie L. Wilson. The trial court held that they had failed to meet this burden.

There is also direct conflict in the evidence as to the harvesting of the corn crop. Wilson testified that Chapman had gathered between 1,000 and 1,500 bushels of corn prior to October 20, 1932, while Chapman testified that he commenced to gather the corn after October 22, 1932, and that prior to that date he had only husked about 150 bushels for feed. Some time after the sheriff's deed was issued to the Equitable Life Insurance Company on October 22, 1932, the tenant, Chapman, delivered to the insurance company something over 1,700 bushels of corn of the value of $529.20, and it was stipulated that the cash rent due from the tenant, Chapman, after allowing offsets, was $200.

This action was apparently brought by Walter L. Wilson naming his wife, Minnie L. Wilson, Mr. and Mrs. Harold Chapman, and two other parties, defendants, to recover from Chap-

mans the rental alleged to have been agreed upon in the claimed oral lease made in December, 1931. The Equitable Life Insurance Company intervened, claiming that it was entitled by reason of its sheriff's deed to the rents arising from the real estate in question. The appellant, Minnie L. Wilson, filed an answer to the petition of intervention of the insurance company and cross-petition claiming that she was entitled to the rents in controversy. The issues thus joined were submitted to the trial court and, as we have indicated, the court found that the appellant had not established her claim; that the equities were with the intervenor, Insurance Company, and found that the intervenor, Insurance Company, was the owner and entitled to receive the landlord's share of all the crops and rentals during the year 1932; and that none of the adverse claimants or any one claiming by, through, or under them had any right, interest, or title whatsoever in such rentals, and judgment was entered against Walter L. Wilson for costs of the action.

It is the law of this state that the grantee in a sheriff's deed succeeds instantly to all the rights of his grantor in the real estate and is entitled to all unaccrued rents which were due to the grantor. Bank v. Ogle, 208 Iowa 15, 221 N. W. 537, 538; Goldstein v. Mundon, 202 Iowa 381, 210 N. W. 444; Clark v. Strohbeen, 190 Iowa 989, 181 N. W. 430, 13 A. L. R. 1419; Nelson v. Tracy, 184 Iowa 1118, 169 N. W. 442.

In the Bank v. Ogle case, supra, we said:

"Conveyance of land passes all right, title, and interest of the grantor therein, including the unaccrued rent of an attaching unexpired lease."

In the Goldstein v. Mundon case, supra, we said:

"Under his sheriff's deed, the plaintiff succeeded instanter to all the rights of his grantor in said real estate. In so far as such grantor had become a landlord and was entitled to unaccrued rents, such unaccrued rents passed at once to the plaintiff. If any rental share of crops was due such grantor, as landlord, such rental share inured at once to the benefit of the plaintiff, and he became entitled to receive the same from the tenants in lieu of his grantor, and this is so regardless of whether the crops were matured or unmatured."

The rule announced in the foregoing cited cases is not con-

troverted by the appellant here, but she claims that such rule is not applicable to the state of facts as disclosed by this record. With this contention we cannot agree.

 It is well settled that in the absence of a contrary agreement, rental is neither earned nor payable until the expiration of the term, or in any event rental is not due prior to the customary time of paying the same. The record in this case shows without controversy that the customary time for paying cash rent in the community in which this land was situated was either January 1st, or February 1st, following the commencement of the lease, and that the landlord's share of the corn is customarily delivered after December 1st, of the lease year. As we have indicated, and as found by the trial court, there was no agreement of lease entered into between the tenants Chapman and the Wilsons.

It follows that no definite time was fixed for the payment of the cash rental or the delivery of the landlord's share of the corn. It also follows that no rental had accrued at the time of the issuance of the sheriff's deed to the insurance company on October 22, 1932, and that under the rules laid down in the cited cases the insurance company instantly became the owner of the real estate and was entitled to receive all rentals therefrom. It is therefore our holding that the judgment and decree of the trial court was right, and that it should be and it is hereby affirmed.—Affirmed.

KINTZINGER, C. J., and HAMILTON, POWERS, PARSONS, MITCHELL, DONEGAN, and ALBERT, JJ., concur.